UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HAYES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK,<br><br>　　　　Defendant. | Case No. 19-cv-02106-TSH<br><br>**REPORT AND RECOMMENDATION TO DISMISS COMPLAINT WITH PREJUDICE**<br><br>Re: Dkt. No. 10 |

## I.　INTRODUCTION

Plaintiff Thomas Hayes filed a complaint and an application to proceed in forma pauperis ("IFP"). Compl., ECF No. 1; Appl., ECF No. 3. The Court granted Hayes's IFP application but ordered him to revise his complaint. Order Granting IFP and Screening Compl. ("Order"), ECF No. 9. On July 19, 2019, he filed a revised complaint. Am. Compl., ECF No. 10. For the reasons stated below, the undersigned finds that the amended complaint still fails to state a claim for which relief may be granted pursuant to 28 U.S.C. § 1915(e). As not all parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), the Court requests this case be reassigned to a District Judge, with the recommendation that the Amended Complaint be **DISMISSED WITH PREJUDICE** and that Facebook's motion to dismiss (ECF No. 11) and Hayes's motion for summary judgment (ECF No. 13) be **DENIED AS MOOT**.

## II.　BACKGROUND

This case has a fairly involved history. It began in Colorado as a different lawsuit.

**A.　The 19-cv-1297 Civil Action**

Hayes filed the 19-cv-1297 action on September 12, 2018, in the District of Colorado. 19-cv-1297, ECF No. 1. In the amended complaint, Hayes sued Facebook and its CEO Mark

Zuckerberg for defamation concerning warnings Facebook posted about clicking on the links to Hayes's own website or his email address. *Id.*, ECF No. 10. All parties consented to Magistrate Judge jurisdiction in this action. *Id.*, ECF Nos. 17, 32, 34.[1]

As alleged in the amended complaint (*id.*, ECF No. 10), Hayes owns Seventh Generation Fuels, LLC, a start-up company that aims to become an environmentally clean renewable energy producer. He owns three web pages (all at the domain wakute.wixsite.com) touting the company's exclusive licensing, brokering, contracting and leasing rights, as well as other business rights related to U.S. patent No. 9057024. Hayes joined Facebook on June 28, 2018 to promote his business and website, with the specific goal of enlisting Facebook users to write or help write a grant application for his business. He says the company needed to raise approximately $80,000 in funding.

Starting on July 10, 2018, Hayes discovered that when Facebook users clicked on the link to the wakute.wixsite.com website or on his email address (santeeseven@yahoo.com), Facebook displayed the message: "BLOCKED – We believe the link you are trying to visit is malicious. For your safety, we have blocked it." Starting on September 22, 2018, the message changed to: "You Can't Go to This Link From Facebook. The link you tried to visit goes against our Community Standards." Hayes referred to these as the "blocking messages."

Hayes alleged that these messages deterred potential grant writers and investors from contacting him by suggesting they will get a computer virus if they do so. He sought $80,000 in damages for his inability to get a grant. He also sought $30 million in damages for what he called the administrative start-up costs listed in his company's 2018-19 business plan, or if that full

---

[1] After the Court issued an order dismissing the amended complaint with leave to amend, Hayes filed a declination. *Id.*, ECF No. 70. However, once a civil case is referred to a magistrate judge under 28 U.S.C. § 636(c), the reference can be withdrawn only by the court, and only "for good cause shown on its own motion, or under extraordinary circumstances shown by any party." 28 U.S.C. § 636(c)(5); *see also Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993) (citing *Fellman v. Fireman's Fund Ins. Co.*, 735 F.2d 55, 58 (2d Cir. 1984)); Fed. R. Civ. P. 73(b)(3). There is no absolute right, in a civil case, to withdraw consent to trial and other proceedings before a magistrate judge. *Dixon*, 990 F.2d at 480. Hayes did not show good cause or present evidence of extraordinary circumstances for the Court to allow him to withdraw his consent to magistrate judge jurisdiction. Therefore, his May 9, 2019, declination of magistrate judge jurisdiction was disregarded.

1   amount were not awarded, 10% of it.

2       On March 28, 2019, the Court granted Defendants' motion to dismiss because the facts
3   alleged in the amended complaint did not show that Facebook's alleged statements were *about*
4   *Hayes*. *Id*., ECF No. 61 at 5.  The Court also found that there were no allegations against
5   Zuckerberg sufficient to name him as a defendant.  *Id*. at 6.  The Court gave Hayes 30 days to file
6   a second amended complaint.  *Id*.

7       On April 18, 2019, Hayes filed a new case based on similar factual allegations, but with
8   Facebook as the only named defendant.  19-cv-2106, ECF No. 1.  Because the two cases involved
9   common questions of fact and law, the Court consolidated them pursuant to Federal Rule of Civil
10  Procedure 42 and ordered Hayes to file a notice stating whether his April 18, 2019 complaint was
11  (1) intended to be an amended complaint in his original case, 19-cv-1297, or (2) intended as a new
12  case, separate from 19-cv-1297.  19-cv-1297, ECF No. 64; 19-cv-2106, ECF No. 6.  Hayes failed
13  to file an amended complaint in 19-cv-1297 and failed to respond to the Court's order requesting
14  clarification.

15      "Under Ninth Circuit precedent, when a plaintiff fails to amend a complaint after the
16  district judge dismisses the complaint with leave to amend, the dismissal is typically considered a
17  dismissal for failing to comply with a court order rather than for failing to prosecute the claim."
18  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999).  To determine whether to dismiss a
19  case for failure to comply with a court order, a court weighs the following factors:  (1) the public's
20  interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the
21  risk of prejudice to defendants, (4) the public policy favoring disposition of cases on their merits,
22  and (5) the availability of less drastic alternatives.  *Id*. at 990 (citing *Hernandez v. City of El*
23  *Monte*, 138 F.3d 393, 399 (9th Cir. 1998).  Dismissal is appropriate "where at least four factors
24  support dismissal . . . or where at least three factors strongly support dismissal."  *Hernandez*, 138
25  F.3d at 399 (citations and internal quotation marks omitted).

26      The Court found that three of the five factors strongly supported dismissal of the 19-1297
27  action, and the other two were neutral.

28      The first two factors – the public interest in expeditious resolution of litigation and the

United States District Court
Northern District of California

Court's need to manage its docket – relate to the "efficient administration of judicial business for the benefit of all litigants with cases pending," *Nealey v. Transportacion Maritima Mexicana, S.A.,* 662 F.2d 1275, 1279 (9th Cir. 1980). By failing to amend his complaint to address the deficiencies the Court identified in its dismissal order, Hayes brought the 19-cv-1297 action to a halt. For example, he attempted to move for summary judgment, 19-cv-1297, ECF No. 78, but since there was no operative pleading, there was nothing for him to move for summary judgment on, as the Court explained in its order denying the motion as moot. *Id.*, ECF No. 79. The absence of an operative pleading more than three months after the Court gave Hayes leave to amend left the 19-1297 civil action rudderless. Further, Hayes's filing of a second and nearly identical lawsuit created an unnecessary duplication of effort by the Court and a waste of judicial resources. The first two factors therefore strongly favored the dismissal of the 19-cv-1297 action.

As to the third factor – the risk of prejudice to Defendants – "a presumption of prejudice arises from the plaintiff['s] failure to prosecute." *Hernandez,* 138 F.3d at 400. A plaintiff may rebut this presumption only "with an excuse for his delay that is anything but frivolous." *Nealey*, 662 F.2d at 1281. Here, Hayes provided no excuse for his failure to file a further amended complaint. And when the Court specifically asked him if the new complaint in the 19-cv-2106 action should be deemed the amended complaint in the 19-cv-1297 action, Hayes did not respond. Further, even aside from the presumption of prejudice, it was obvious that having two nearly identical lawsuits pending against the same defendant was prejudicial. If this Court did not dismiss the 19-cv-1297 action, Facebook would have had to expend resources to try to get the case resolved, when the same dispute was also pending between the parties in the 19-cv-2106 action. Accordingly, this factor strongly weighed in favor of dismissal.

The fourth factor concerns the public policy favoring disposition of cases on their merits, which in most cases "strongly counsels against dismissal." *In re PPA Prods.,* 460 F.3d 1217, 1228 (9th Cir. 2006). Nonetheless, the Ninth Circuit has recognized that "a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines . . . cannot move forward toward resolution on the merits." *Id.* Consequently, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct

impedes progress in that direction." *Id.* (citations and internal quotation marks omitted). Here, Hayes's failure to further amend his complaint impeded all progress in this case. Further, a dismissal of the 19-cv-1297 action did not preclude a disposition of the dispute between Hayes and Facebook on the merits because of the existence of the 19-cv-2106 action. Thus, this factor was neutral.

The fifth factor is the availability of less drastic sanctions. This factor was neutral because a dismissal of the 19-cv-1297 action was not a drastic sanction given the pendency of the same dispute in the 19-cv-2106 action.

Accordingly, on July 3, 2019, the Court dismissed the 19-cv-1297 civil action without prejudice. 19-cv-1297, ECF No. 83.

**B.      The 19-cv-2106 Civil Action (This Case)**

As noted, Hayes filed the current civil action on April 18, 2019 in this District.

### 1.      The Original Complaint

In the original complaint, Hayes alleged a libel claim against Facebook. It was very similar to his libel claim in the 19-cv-1297 action. Hayes alleged that he owns Seventh Generation Fuels, LLC, a start-up company that aims to become an environmentally clean renewable energy producer. ECF No. 1, Compl. at 3-4. He owns three web pages (all at the domain wakute.wixsite.com) touting the company's exclusive licensing, brokering, contracting and leasing rights, as well as other business rights related to U.S. patent No. 9057024.

Hayes alleged that he joined Facebook on June 28, 2018 to promote his business and website, with the goal of enlisting Facebook users to write or help write a grant application for his business and obtain $80,000. *Id.* at 4. He created an accompanying business Facebook page, also on June 28th, 2019. Both Facebook pages have the same identifying logo. *Id.*

Beginning on July 10th, 2018, Hayes discovered that his posts and articles were being "spammed." *Id.* Sometime after he noticed his contact information was also being "blocked and libeled." *Id.* Hayes alleged that "[s]ince that was the time the harassment [by Facebook] started it is the obvious conclusion the all harassment including the libel were initiated simultaneously, nevertheless it occurred." *Id.*

From July 10, 2018, until September 12, 2018, Facebook publicly posted the following message and displayed it to all active Facebook users, investors and viewers whenever they clicked on Hayes's web-page or email address: "BLOCKED - We believe the link you are trying to visit is malicious. For your safety, we have blocked it." *Id.* at 6. On September 22, 2018, the blocking message changed to: "You Can't Go to This Link From Facebook. The link you tried to visit goes against our Community Standards." *Id.*

According to Hayes, after he "told" the Court about Facebook's use of his "libeled and blocked" contact information in "this very case," it unblocked all of his web pages without comment. *Id.* at 5. Facebook removed the "malicious" statement but left an Instagram message saying the link might have been removed. *Id.*

Hayes alleged the latter proves that Facebook knows who he is and is proof of culpability. *Id.* According to Hayes, "the damage has been done and is irreversible." *Id.* He alleged that Facebook "generated a slanderous and libelous statement" by claiming that Hayes, who is identifiable in all of his business web pages and promotions as santeeseven@yahoo.com, was "malicious" and "harmful." *Id.*

Hayes sought $80,000 in damages for his inability to get a grant. *Id.* at 8. He also sought $30 million in damages for what he calls the administrative start-up costs listed in his company's 2018-19 business plan, or if that full amount were not awarded, 10% of it. *Id.*

### 2. Sua Sponte Screening Under 28 U.S.C. § 1915(e)(2)

A district court may authorize the start of a civil action in forma pauperis if the court is satisfied the would-be plaintiff cannot pay the filling fees required to pursue the lawsuit. *See* 28 U.S.C. § 1915(a)(1). Hayes submitted the required documentation demonstrating an inability to pay the costs of this action, and it was evident from the application that his assets and income are insufficient to enable payment of the fees. *See* Appl., ECF No. 3. Accordingly, the Court granted Hayes's application to proceed in forma pauperis. ECF No. 9.

However, the Court was also required to review Hayes's complaint to determine whether the action may be allowed to proceed. The Court was required to dismiss the complaint if it was frivolous, failed to state a claim upon which relief can be granted, or sought monetary relief

against a defendant who was immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To make this determination, courts assess whether there is a factual and legal basis for the asserted wrong, "however inartfully pleaded." *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984) (internal quotations omitted). Pro se pleadings are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Moreover, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Unless it is clear that no amendment can cure the defects of a complaint, a pro se plaintiff proceeding in forma pauperis is entitled to notice and an opportunity to amend before dismissal. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint set forth a "short and plain statement of the claim showing the pleader is entitled to relief." Rule 8(d)(1) requires that each allegation in a pleading be "simple, concise, and direct." *See McHenry v. Renne*, 84 F.3d 1172, 1177, 1179 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"). The failure to comply with Rule 8 is a basis for dismissal that is not dependent on whether the complaint is without merit. *Id.* Accordingly, even claims which are not on their face subject to dismissal under Rule 12(b)(6) may still be dismissed for violating Rule 8(a). *Id.* In addition, the complaint must include facts which are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Hayes's original complaint did not comply with Rule 8 because the factual basis for his libel claim did not connect his alleged facts to his claim. Specifically, Hayes brought a libel claim against Facebook but the two statements by Facebook which served as the foundation for his claim did not refer to Hayes. "In California, whether statements can be reasonably interpreted as referring to [the] plaintiff[] is a question of law for the court . . . . If there is no express reference to the plaintiff in a defamation statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008).

7

Hayes alleged that Facebook's blocking notices displayed when users clicked on the link to his business website or his email address (santeeseven@yahoo.com). The statements themselves were that the link was malicious (from July to September) or that the link violated Facebook's community standards (starting September 22). Neither statement was an express reference to Hayes. Further, the facts alleged in the complaint did not plausibly show that the statements about the links referred by reasonable implication to Hayes himself.

To be sure, Hayes added allegations to the complaint in an effort to address this same deficiency the Court found in the amended complaint in the 19-cv-1297 action, namely, that Facebook's alleged statements were not about Hayes. Hayes now alleged that he had a business Facebook page with a recognizable logo, and the Court assumed this logo was also on the wakute.com pages. Further, Hayes alleged that his business Facebook page stated that he is the owner of Seventh Generation. And he adequately alleged that *his* Facebook posts were about him. Compl. at 5 ("The posts were about the Plaintiff's life so that anyone that read them would know who the Plaintiff is."). What was not apparent from the complaint was that readers would have understood that *the blocking notices* on Hayes's Facebook pages – the content he alleged was defamatory – were about him. The statements attributed to Facebook concerned *an internet link*. A malicious activity warning about an internet link to an article on a company's website, or to a company's email address, does not plausibly suggest anything negative about the owner of the company.

Accordingly, the Court screened the complaint and ordered Hayes to amend the complaint to state as clearly as possible factual allegations showing that Facebook's blocking statements referred to Hayes. ECF No. 9.

### 3. The Amended Complaint

Hayes filed an amended complaint on July 19, 2019. ECF No. 10. He now asserts two claims for libel against Facebook.

#### a. Claim One

Hayes alleges that on June 28, 2018, he opened a Facebook account. Facebook's policy is to request that in order to create a business page, a personal page should be opened first.

8

Accordingly, Hayes opened a page in his name.  He then created his accompanying business page under the name Seventh Generation Fuels LLC ("SGF-LLC").  Hayes added his SGF-LLC Wix.com web pages and his email address santeeseven@yahoo.com to the personal information on his personal Facebook page.  Hayes's original plan was to use his personal Facebook page to post about himself and his life stories to promote SGF-LLC, whereas the SGF-LLC page would remain empty of posts in the hope that Hayes would be able to report business successes on that page.  To that end, Hayes made only one post on his SGF-LLC Facebook page in 2018, whereas he made numerous posts on his personal Facebook page in 2018.  In 2019 the plan changed for the SGF-LLC page, and there have been 14 posts so far.  The SGF-LLC page never had an article or post spammed; the libel claim relates only to Hayes's personal Facebook page.

The business objectives behind both Facebook pages and all three of the SGF-LLC Wix.com web pages were to maximize viewers, obtain SGF-LLC administrative start-up costs of $30 million, and to enlist Facebook viewers to help find or write an environmental non-fossil fuel material grant application.

Sometime after July 10, 2018, Hayes discovered that his posts on his personal Facebook page "were being continually spammed."  In common parlance, "spam" normally refers to unwanted emails.  But what Hayes means is that "[s]pamming a post blocks the post from Facebook viewers."  Hayes alleges he gave notice to Facebook that he was being harassed by his posts being blocked, and he asked Facebook to stop but it wouldn't.

From sometime after July 28, 2018 until September 12, 2018, Facebook publicly posted the following message and displayed it to all active viewers whenever they clicked on Hayes's email address (santeeseven@yahoo.com) as it appeared on his personal Facebook page: "BLOCKED – We believe the link you are trying to visit is malicious.  For your safety, we have blocked it."  On September 22, 2018, the blocking post changed to: "You Can't Go to This Link From Facebook.  The link you tried to visit goes against our Community Standards."

As of the date the amended complaint was filed, when Facebook viewers click on the email address on Hayes's personal Facebook page, Facebook generates a new page that says: "Sorry, this page isn't available.  The link you followed may be broken, or the page may have been

1  removed. Go back to Instagram."

2  Hayes alleges that Facebook's actions "caused potential investors to believe none of the
3  Plaintiff's web-page content is valid nor true and that Plaintiff is too malicious to contact." Hayes
4  "also submits that the message is a threat to viewers suggesting if they decide to contact the
5  Plaintiff's email address they could get a virus or suggesting that the Plaintiff and his
6  entrepreneurship of being untrustworthy, negative and economically unviable."

### b. Claim Two

In 2018 Hayes sent a Facebook friend request to his son, Mato Ska Hayes, who has PTSD from his time as a crew chief during the Iraq war. His son accepted the request, stating, "I love you Dad." Hayes emailed[2] him back with his contact information, including a link to his email address. The next day he found that Facebook left him a message stating that his return message to his son had been blocked because "This message was removed because it included a link that goes against our community standards." Soon after this, Hayes's son unfriended him, and his son's Facebook page has not had a new post since that time.

### c. Requested Relief

As before, Hayes requests that Facebook be ordered to pay SGF-LLC's administrative start-up costs of $30 million. In addition, he requests $80,000 to pay for the grant money he did not receive because Facebook's blocking notices prevented him from finding a grant writer. He also requests $3 million to find and give to his son.

### 4. Analysis

The legal standard for screening a complaint sua sponte is set forth above. The question presented is whether Hayes's amended complaint states a defamation claim against Facebook, and the Court concludes that the answer is still no.

Under California law, "Plaintiffs who sue for defamation must show that the allegedly libelous statements were made 'of and concerning' them, i.e., referred to them personally." *Barger v. Playboy Enters.*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983). A defamation plaintiff

---

[2] That's what the amended complaint says. In context, Hayes probably means he messaged his son.

"cannot constitutionally establish liability unless he proves that the contested statements are 'of and concerning' him either by name or by 'clear implication.'" *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999). "In California, whether statements can be reasonably interpreted as referring to [the] plaintiff[] is a question of law for the court . . . . If there is no express reference to the plaintiff in a defamation statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *SDV/ACCI, Inc.*, 522 F.3d at 959. "The 'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986).

*Bartholomew v. YouTube, LLC.*, 17 Cal. App. 5th 1217 (2017), is instructive for how California courts apply the "of and concerning" requirement in an internet context like this one, where a website blocks a link to something posted by a user. In *Bartholomew*, a musician signed up for YouTube and uploaded one of her music videos to YouTube to promote herself and her business. YouTube blocked Bartholomew's video, replacing it with "the image of a distressed face" and a "written statement" that the "video had been removed because its content violated YouTube's Terms of Service." *Id*. at 1222. Like Facebook's in this case, YouTube's notice did not refer to the musician. *Id*. She nevertheless brought claims for libel. *Id*. at 1224. The musician argued that the statements referred to her because she had a unique page: the video she posted had a specific "URL" that was "dedicated to her video" alone. *Id*. at 1228. YouTube's statements could further be linked to her, the musician argued, because she had "shar[ed] the URL with her listeners, viewers, and other members of the public." *Id*. at 1221. The Court rejected both arguments. It concluded that "the central problem with [the musician's] analysis is her failure to allege how the hyperlink would be viewed as defaming her personally." *Id*. at 1228. The Court explained that any "Internet user with a reasonable working knowledge of how Internet hyperlinks work would have understood" that the allegedly defamatory notices were "general – that no particular offense could be reasonably read to apply to" the musician. *Id*. at 1229.

Here, too, Facebook's blocking statements were at most a commentary on an internet link.

11

The first notice said "We believe *the link you are trying to visit* is malicious."  (emphasis added). The second notice said "*The link you tried to visit* goes against our Community Standards." (emphasis added).  No reasonable person would interpret those statements as being about Hayes personally.  *See Bartholomew*, 17 Cal. App. 5th at 1228 ("the central problem with Bartholomew's analysis is her failure to allege how the hyperlink would be viewed as defaming her personally"); *id*. at 1232 ("Nor do we believe that by linking Bartholomew's URL to the Community Guideline Tips that YouTube has made the statements of and concerning her.").

The third notice ("Sorry, this page isn't available.  The link you followed may be broken, or the page may have been removed.  Go back to Instagram.") is also not about Hayes personally, and in addition is not defamatory.  *See* Cal. Civil Code § 45 (libel exposes someone to "hatred, contempt, ridicule, or obloquy" or causes him to "be shunned or avoided" or "injure[s] him in his occupation").  And the message at issue in claim two ("This message was removed because it includes a link that goes against our community standards.") is similarly not about Hayes personally, and according to the allegations in the amended complaint, was said *to Hayes*.  That's the reverse of defamation, which is supposed to be a negative statement *about the plaintiff* that is said *to other people*.

The Court has already given Hayes leave to amend, and his amended complaint remains just as distant from stating a claim as his original complaint was.  Also, if you count the prior lawsuit, Hayes has now filed a total of four complaints against Facebook over the same thing, and they have all been defective.  Therefore, the undersigned concludes that the amended complaint in this action should be dismissed with prejudice because its defects cannot be cured with a further amendment.

### III.   CONCLUSION

Because the parties have not consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), the Clerk of Court shall **REASSIGN** this case to a District Judge, with the recommendation that Hayes's amended complaint be **DISMISSED WITH PREJUDICE** and that Facebook's motion to dismiss (ECF No. 11) and Hayes's motion for summary judgment (ECF No. 13) be **DENIED AS MOOT**.

Pursuant to Federal Rule of Civil Procedure 72, any party may serve and file objections to this Report and Recommendation within 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: August 15, 2019

THOMAS S. HIXSON
United States Magistrate Judge